[No. 32201. *En Banc.* July 14, 1952.]

L. C. HUNTAMER *et al., Respondents,* v. EARL COE, *as Secretary of State, Appellant.*[1]

[1]Reported in 246 P. (2d) 489.

*The Attorney General* and *Lyle L. Iversen, Assistant,* for appellant.

*Hatten & Lesser,* for respondents.

*Kenneth A. MacDonald, amicus curiae.*

FINLEY, J.—Plaintiffs, seeking an adjudication of alleged rights under our declaratory judgment act, instituted this suit in the superior court for Thurston county against the secretary of state, Earl Coe, in his capacity as chief election officer of the state of Washington. Specifically, plaintiffs sought to have § 16, p. 801, and subsection (e) of § 1, p. 794, of chapter 254, Laws of 1951, adjudged unconstitutional, null, and void.

The trial court took jurisdiction of the case on the basis that the declaratory judgment act was applicable, and adjudged the above provisions of chapter 254, *supra* (hereinafter referred to as chapter 254), to be unconstitutional, null, and void. The secretary of state has appealed.

The facts in this case may be briefly stated as follows: As found by the trial court, L. C. Huntamer, Thomas C. Rabbitt, Florence M. Morrissey, and James A. McDaniel, residents and electors of this state, desire and intend to become candidates, respectively, for governor, United States Congress, and the state legislature.

The secretary of state has indicated that, in connection with the filing of declarations of candidacy, and pursuant to § 16 and subsection (e) of § 1 of chapter 254, he, or the proper county election officials, will require that candidates for governor, United States Congress, and the state legislature execute an affidavit as follows:

"DECLARATION AND AFFIDAVIT OF CANDIDACY
"(For Partisan Offices)
Defendant's Exhibit No. 1
Thurston County Cause No. 26451
Date Admitted 5/26/52

"STATE OF WASHINGTON ⎫
 ⎬ss. DECLARATION
"County of ...................⎭

 "I, ........................................................., declare upon honor that I reside
 (Please print name)
at ..................................................................., of ............................... County of
 (Street and number, or rural route) (Name of city or town)
................................................., State of Washington, and am a qualified
voter therein, and a member of the ....................................................................
 (Political party affiliation)
Party; that I hereby declare myself a candidate for nomination to the
office of ...................................... to be made at the primary election to be
held on the ................ day of September, 19........., and hereby request that
my name be printed upon the official primary ballots, as provided by
law, as a candidate of the ......................................... Party and I accompany
herewith the sum of ......................................... Dollars, the fee required by
law of me for becoming such a candidate.

AFFIDAVIT

 "Further, I do solemnly swear that I have read the provisions of
Section 1, Chapter 254, Laws of 1951, of the State of Washington, de-
fining a subversive person as quoted below; that I understand and I am
familiar with the contents thereof; and that I am not a subversive per-
son as therein defined.

-------------------------------------------------------------------------
(Please print name to assure correct spelling)
 SIGN HERE .....................................................
 (Signature of candidate as name will
 appear upon ballot)
Subscribed and sworn to before me this ................ day of ..........................,
19.............

 .....................................................
 (Signature of official)

 .....................................................
 (Official title)

 "EXCERPTS OF CHAPTER 254, LAWS 1951
 "Sworn Statement by Candidate
"Sec. 16. No person shall become a candidate for election under the
laws of the State of Washington to any public office whatsoever in this
state, unless he or she shall file an affidavit that he or she is not a sub-
versive person as defined in this act. No declaration of candidacy shall·
be received for filing by any election official of any county or subdivi-
sion in the State of Washington or by the Secretary of State of the State
of Washington unless accompanied by the affidavit aforesaid, and there
shall not be entered upon any ballot or voting machine at any election
the name of any person who has failed or refused to make the affidavit
as set forth herein.
 "Definition of a Subversive Person
"Sec. 1, Paragraph (e) 'Subversive person' means any person who
commits, attempts to commit, or aids in the commission, or advocates,

abets, advises or teaches by any means any person to commit, attempt to commit, or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Washington, or any political subdivision of either of them, by revolution, force, or violence; or who is a member of a subversive organization or a foreign subversive organization."

The applicable provisions of chapter 254, § 16, and subsection (e) of § 1, are set forth above in our full quotation of the declaration and affidavit of candidacy proposed by the secretary of state.

Two questions are involved in this appeal:

(1) Whether, under our declaratory judgment act (RCW 7.24), Rem. Rev. Stat. (Sup.), § 784-1 et seq., Laws of 1935, chapter 113, p. 305, plaintiffs have spelled out a case that justifies an adjudication of their alleged rights; and

(2) Whether chapter 254, Laws of 1951, is unconstitutional, (a) in that it allegedly imposes qualifications for office upon candidates for Congress and candidates for certain state constitutional offices in addition to those qualifications required by the United States and the Washington state constitutions relative to the particular offices; and (b) in that chapter 254 requires an oath or affidavit of candidates for the particular offices, allegedly, with the result that chapter 254 is ex post facto in effect, and is in the nature of a bill of attainder, imposing a disqualification or punishment upon the particular candidates for past conduct or activity not previously proscribed or illegal.

Plaintiffs state they will be prevented from becoming candidates for the respective offices because they cannot or will not execute the oath or affidavit as proposed by the secretary of state as they interpret and understand it and its effect.

Because of the particular circumstances in this case, involving, as they do, some questions of considerable public interest and importance, we think the trial court acted properly in assuming jurisdiction to adjudicate certain questions in the case under our declaratory judgment statute. In saying this, we are fully aware of the decisions regarding

our declaratory judgment act in the following cases: *Washington Beauty College v. Huse*, 195 Wash. 160, 80 P. (2d) 403; *Johnson v. State*, 187 Wash. 605, 60 P. (2d) 681, 106 A. L. R. 237; *Acme Finance Co. v. Huse*, 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345; and *State ex rel. Yakima Amusement Co. v. Yakima County*, 192 Wash. 179, 73 P. (2d) 759.

In Anderson, Actions for Declaratory Judgments 1413 (1951), the following statement is found:

"A petition for a declaratory judgment is particularly appropriate to determine the constitutionality of a statute when the parties desire, and the public need requires, a speedy determination of the public interest involved therein."

In *Allison v. Sharp*, 209 N. C. 477, 481, 184 S. E. 27, where the facts admittedly were somewhat different from those in the case at bar, the supreme court of North Carolina said:

"The plaintiffs and all the people of the State are vitally affected by the statute in controversy. While there was another remedy at law available to them, they have challenged the constitutionality of the statute under which they contend that the registrar refused them registration. Under such circumstances and conditions, the Uniform Declaratory Judgment Act affords a ready means of testing its validity."

We will now discuss the questions relating to the constitutionality of the indicated provisions of chapter 254.

Oaths of office and oaths of allegiance have been of tremendous importance in the organization and functioning of society since very ancient times. In *Imbrie v. Marsh*, 3 N. J. 578, 581, 71 A. (2d) 352, we find a pertinent reference as follows:

" 'No country can subsist a twelve-month where an oath is not thought binding; for the want of it must necessarily dissolve society,' *Omychund v. Barker*, 1 Atk. 21, 34 (Ch. 1744). The oath has played a significant part in government from the earliest times; thus we find Lycurgus saying to the Athenians: 'An oath is the bond that keeps the state together,' *Oratio* in *Leocratem* 80, and *Montesquieu* attributing the strength of the Romans to their respect for an

oath: 'Such was the influence of an oath among these people that nothing bound them stronger to the laws. They often did more for the observance of an oath than they would have done for the thirst of glory or the love of their country,' *The Spirit of the Laws, Book* VIII, c. 13. Wigmore has traced the long history of the oath from its 'summoning of Divine vengeance upon false swearing,' to 'a method of reminding the witness of the Divine punishment somewhere in store for false swearing,' 6 *Wigmore on Evidence* 285. The importance of the oath in judicial proceedings cannot be overestimated; the judge on the bench, the jury in the box, the attorneys at the counsel table, the witness on the stand, the court stenographer taking a record of the proceedings, and even the bailiffs when they retire to guard the jury in its deliberations, are all sworn to do their respective duties before they are permitted to act. The responsibilities of members of the Legislature and other state officers are certainly of no less importance to the public welfare."

Some considerable distinction may be noted between (a) an oath of office and (b) an oath of allegiance. The first, in its simplest terms, merely requires an office holder to perform the duties of his office honestly, faithfully, and to the best of his ability. An oath of allegiance, on the other hand, has somewhat different ramifications; in simple form, the person taking the latter kind of oath usually pledges to support and defend the principles or purposes of the organization of which he is a member or an officer. The pledge normally may require loyalty to, and defense of, the constitution and by-laws of the particular organization.

Throughout Anglo-American history, as indicated above, there has been much use, and some abuse, of oaths of allegiance in connection with the organization and functioning of government. The abuse of oaths of allegiance seems to have centered around two things: (a) oaths designed to disqualify from office individuals of a particular religious belief or association; and (b) oaths designed to disqualify individuals from office because of past conduct, usually involving past political beliefs or activities. In England, the oath of supremacy, required under a statute enacted in the year 1562, made it necessary for members of the House of

Commons to swear that the queen was supreme in spiritual as well as temporal causes, and that no foreign person or potentate had any authority, ecclesiastical or spiritual, within the realm. In 1609, a requirement was added to the effect that the king was lawfully king, and that the pope had no power to depose him. The final result of this legislation and the oaths required thereby was that both houses of Parliament for some time were effectually closed to members of the Roman Catholic Church.

After the war between the northern and southern states, oaths of allegiance were used in our own country to bar adherents of the Confederate cause from public office under certain circumstances. *Cummings v. Missouri*, 4 Wall. 277, 71 U. S. 277, 18 L. Ed. 356; *Ex parte Garland*, 4 Wall. 333, 71 U. S. 333, 18 L. Ed. 366. A provision to this effect was actually written into the fourteenth amendment to the United States constitution; however, it gave Congress the power to remove the *ex post facto*, bill of attainder, disqualification from office by a two-thirds vote.

In view of the foregoing historical aspects of the problem in considering the constitutionality of chapter 254, our concern is whether or not the oath or affidavit required thereby constitutes either (1) a restraint upon religious freedom, or (2) is *ex post facto*, or in the nature of a bill of attainder, imposing punishment for past conduct or political activity not previously proscribed or illegal.

We can state quickly and positively that the statute in question imposes no restraint upon religious freedom.

Almost as quickly, and just as positively, we can state that the statute is not *ex post facto*, nor a bill of attainder, imposing punishment for past conduct or political activity, as will be outlined more fully hereinafter.

■ It is our belief that the language of § 16 of chapter 254 is sufficiently broad and inclusive to apply to candidates for the United States Congress as well as to candidates for state offices. The first sentence of the section reads, in part, "No person shall become a candidate for election under the laws of the State of Washington . . . ."

This sentence is all inclusive and refers to the election machinery, the functioning and operation of same, within this state. The next phrase in the section reads, "to any public office whatsoever in this state, . . ." Again, this language is broad and inclusive. The aforementioned language is followed by the all-inclusive sentence,

"No declaration of candidacy shall be received for filing by any election official of any county or subdivision in the State of Washington or by the Secretary of State of the State of Washington unless accompanied by the affidavit aforesaid, and there shall not be entered upon any ballot or voting machine at any election the name of any person who has failed or refused to make the affidavit as set forth herein."

The office of United States congressman is unquestionably a Federal office and not a state office, although congressmen are elected from and do in one sense of the word represent particular political subdivisions or districts within particular states. Congressmen are elected through the operation of the election machinery of particular states. The language of chapter 254, referred to just previously herein, is directed to the operation and functioning of the election machinery in the state of Washington. For the reasons pointed out more fully hereinafter, we think § 16, of chapter 254, can and does apply to or covers the office of United States congressman.

The third paragraph of Article VI of the United States constitution reads as follows:

"The senators and representatives before mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation to support this constitution; but no religious test shall ever be required as a qualification to any office or public trust under the United States."

The words "shall be bound by oath or affirmation to support this constitution" definitely connote an oath of allegiance or loyalty regarding the United States constitution and, by direct inference, imply allegiance, loyalty, support

and defense of the government and the laws under the United States constitution. The oath, as required by Article VI, must be taken by senators and representatives in the United States Congress, by members of the several state legislatures, by executive and judicial officers of both the United States and of the several states. This is required, certainly, at the time of or prior to the assumption of the duties, functions and responsibilities of the particular offices concerned. In *Imbrie v. Marsh, supra,* p. 601, Oliphant, J., dissenting, in referring to Article VI, paragraph three, above quoted, says:

"This is a clear mandatory direction that the officers mentioned therein, whether they are federal or state officers, are required to take a formal oath of allegiance to support the Constitution of the United States. The provision does not set forth the form of the oath nor does it attempt to state whether the oath shall be a constitutional oath in each state or as may be provided by statute. The decision in these matters is left to the Congress *and to the several states.*" (Italics ours.)

Article VI has been continuously implemented by Federal legislation requiring an oath of allegiance, beginning with 1 Stat. 23, ch. 1, passed June 1, 1789. It seems noteworthy that this statute was the very first law enacted by the Congress of the United States. In his brief, at page seven, the attorney general of the state of Washington refers to § 16, and subsection (e) of § 1, of chapter 254, and interprets those provisions as follows:

"This language has been judicially determined to mean no more nor less than that the individual *is not presently engaged* in attempting by one means or another to overthrow the government by force and violence and does not knowingly belong to an organization so engaged. This judicial construction has been given by the supreme court of the United States . . ." (Italics ours.)

In his brief, the attorney general urges that the provisions of chapter 254 herein questioned are substantially the same as the provisions of an act passed by the legislature of the state of Maryland. Md. Laws 1949, ch. 86. The attorney

general points out that the United States supreme court in the case of *Gerende v. Board of Supervisors of Elections of Baltimore*, 341 U. S. 56, 95 L. Ed. 745, 71 S. Ct. 565, referring to *Shub v. Simpson*, 76 A. (2d) (Md.), 332, and Md. Laws 1949, ch. 86, § 15, commented as follows:

"We read this decision to hold that to obtain a place on a Maryland ballot a candidate need only make oath that he is not a person who is engaged 'in one way or another in the attempt to overthrow the government *by force or violence*,' and that he is not knowingly a member of an organization engaged in such an attempt."

 We are in agreement with these views as stated by the attorney general of the state of Washington; furthermore, it is our opinion that chapter 254, Laws of 1951, § 16, and subsection (e) of § 1, can and should be interpreted to require an oath of allegiance relating to the present and the future; and that in this sense, the legislation should not be characterized as *ex post facto*, or in effect a bill of attainder. If chapter 254 is susceptible of an interpretation requiring an oath covering and relating to past conduct—political or otherwise—it would in our opinion and under existing authorities be unconstitutional. We believe such an interpretation of the pertinent provisions of chapter 254 is not mandatory or the only one possible.

In *Casco Co. v. Public Utility Dist. No. 1*, 37 Wn. (2d) 777, 788, 226 P. (2d) 235, we said:

"Where a statute is open to two constructions, one of which will render it constitutional and the other, unconstitutional, the former construction, and not the latter, will be adopted. *State ex rel. Northern Pac. R. Co. v. Henneford*, 3 Wn. (2d) 48, 99 P. (2d) 616."

In other words, we think the statute in question can and should be interpreted in a present and prospective sense in so far as the requirement of an oath or affidavit is concerned; and as so interpreted, that it is not unconstitutional, that is, *ex post facto*, or in effect a bill of attainder.

 We do not think that chapter 254 imposes upon candidates for the offices hereinabove mentioned qualifications in addition to those prescribed in either the state or

the United States constitutions. The statute, interpreted and applied in the present and prospective sense, implements and is in furtherance of Article VI, paragraph three, of the United States constitution. It is consistent with the spirit and intent of both the Federal and state constitutions. It is in harmony with our way of life and our ideas of the theory and practice of government in our country, as we see and understand these things. In fact, it is extremely difficult, if not downright impossible, for us to understand or see any reason why any citizen aspiring to public office should object to the kind of oath or affidavit of allegiance we think is required by chapter 254, as we interpret the statute. Pursuant to Article VI, paragraph three, of the United States constitution, the ultimately successful candidates for the particular offices concerned in this appeal—those candidates definitely elected to office by the voters of this state— unequivocably will be required to take an oath of loyalty or allegiance stated in the present or prospective sense at the time or before they assume office. As interpreted and applied by the attorney general of this state, as indicated hereinbefore, the oath required by chapter 254 is in no important respects different from the oath required by Article VI, paragraph three, of the United States constitution. The time for taking such an oath is merely advanced by chapter 254 to the time a candidate files and declares his candidacy, and the oath is required of *all* candidates— those ultimately successful, as well as those ultimately unsuccessful.

In view of what we have said about chapter 254, its interpretation and application, plaintiffs reasonably can have no possible logical convincing objection to it, unless it is the devious, deceiving, and transparently dishonest claim that they have a right, as candidates, to be disloyal during that time elapsing between the date declarations of candidacy must be filed and the subsequent date of assuming office as a successful and elected candidate, when it is imperative that the oath of allegiance must be taken in accordance with Article VI, paragraph three, of the United

States constitution. Any claim of denial of constitutional rights relating to and emphasizing the intervening period, we are convinced, must be characterized as *de minimis*, and is hardly worthy of serious consideration in a constitutional sense.

The requirement of an oath of loyalty or allegiance in a present, prospective sense relative to support and defense of our state constitution, government, and laws, is certainly consistent with the spirit of what we have said regarding a comparable oath relative to the United States constitution. Such a requirement regarding the state constitution and government imposes no additional qualification upon the plaintiffs as candidates for office in this state. Such a requirement has no *ex post facto*, bill of attainder aspects, violative in such respect of either the state or the United States constitution.

We are confident that the attorney general and the secretary of state can and will interpret and apply the pertinent provisions of chapter 254, and that a form of oath or affidavit can and will be devised in conformity with the views expressed herein. Such an oath in connection with the proposed declarations of candidacy of plaintiffs would not infringe on any of their stoutly-claimed constitutional rights, which, in any event, we believe have been meticulously observed, guarded, and protected by our decision in this case.

The judgment of the trial court that chapter 254, Laws of 1951, is unconstitutional, null, and void, is reversed.

ALL CONCUR.

---

August 29, 1952. Petition for rehearing denied.