[No. 32846. *En Banc.* June 22, 1954.]

SAMUEL MANUS et al., *Respondents,* v. SNOHOMISH COUNTY JUSTICE COURT DISTRICT COMMITTEE et al., *Appellants.*[1]

[1]Reported in 271 P. (2d) 707.

*The Attorney General, Donald E. Watson,* and *A. J. Hutton, Jr., Assistants, Phillip Sheridan* and *C. P. Brownlee,* for appellants.

*Archie Baker* and *George H. Holt,* for respondents.

*Waldo F. Stone* and *John B. Speer, amici curiae.*

MALLERY, J.—This case involves the validity of the Laws of 1951, chapter 156, p. 430, and the Laws of 1953, chapter 206, p. 476, in so far as they purport to establish *justice court district committees* with power to create a new system of justice of the peace *districts* in the state.

The Laws of 1951, chapter 156, § 8, p. 432 (RCW 3.14.010), as amended by the Laws of 1953, chapter 206, § 1, p. 476 (RCW (Sup. 1953) 3.14.010), provide for the establishment of a *justice court district committee* in each county comprised of the presiding judge of the superior court, the county commissioners, the prosecuting attorney, one justice of the peace selected by the county commissioners, and the county auditor. It is the duty of the committee to meet prior to January 1, 1954, and group the county precincts entirely outside of justice of the peace precincts in cities of more than five thousand population into one or more justice court *districts.* The board of county commissioners shall establish by resolution justice court *districts* in accordance with the recommendations of the *justice court district committee.* The justice of the peace for a *district,* which includes a city of under five thousand population, may be appointed as police judge of the city.

The members of the *justice court district committee* and the *committee* as such of Snohomish county, which was duly organized and exists pursuant to the sections of the law in question, as paraphrased above, and which was invalidated by the lower court, are the appellants herein.

Appellant members of the committee contend for the validity of the laws creating it, and their right to be members of it. In support of the judgment, the trial court made finding of fact No. 5, which reads:

"That section 1, chapter 206, Laws of 1953, the same being RCW 1953 Supp. 3.14.010, and section 11, chapter 156, Laws of 1951, the same being RCW 3.14.030, are unconstitutional acts of the legislature of the State of Washington and are in direct violation of Amendment 28 to the State Constitution of the State of Washington, which provides in part as follows:

" 'The legislature shall determine the number of justices of the peace to be elected and shall prescribe by law the powers, duties and jurisdiction of the justices of the peace; * * * ' . . .' "

Appellants concede that the number of justices of the peace in the state will be determined by the number of justice of the peace *districts* established at the discretion of the *justice of the peace district committees,* in contravention of the constitutional mandate that "the legislature shall determine the number of justices of the peace to be elected." However, they seek to avoid unconstitutionality of the statutes in question on the ground that they provide for a permissible delegation of legislative authority. A discussion of the standards under which delegation of legislative authority is permissible, is not called for in this case. The specific mandate of the twenty-eighth amendment to the constitution of the state of Washington is too clear for interpretation. It unequivocally places the duty of fixing the number of justices of the peace upon the legislature exclusively, and leaves no room for the applicablity of the doctrine of permissive delegation of legislative authority.

It is true the legislature has not and will not perform the duty imposed upon it by the twenty-eighth amendment by providing for an abstract specific number of justices of the peace. On the contrary, it has and will, by general law, establish a formula from which the exact number of justices of the peace can be determined by reference thereto. In the past, the reference has been to precincts. The reference could, with equal facility, be made to population or any other existing fact or facts thought to be suitable for the purpose. It is immaterial that precincts can be and are changed from time to time by county commissioners as long as they retain their identity as precincts for the pur-

poses served. by precincts. Under the statutes in question, the *justice of the peace district committees,* without reference to any other fact and at their discretion, would create not precincts but an exact number of justice of the peace *districts.* However wise the plan may be, it contravenes the twenty-eighth amendment to the constitution of the state of Washington.

Our holding that the statutes in question violate the twenty-eighth amendment makes it unnecessary to discuss the contentions of the parties hereto relative to violations of the twenty-first amendment to the constitution.

■ The judgment herein strikes down specifically the two sections of the law cited therein. The rule of severability is that only the provisions of a statute are invalid which themselves offend the constitution, together with such others as are so related to them that it cannot be supposed the legislature would have passed them independently.

Our examination of the legislative acts in question impels us to hold that the legislature would not have passed the Laws of 1953, chapter 206, § 6, p. 478 (RCW (Sup. 1953) 3.14.040), which fixed the salaries of the justices of the peace of the new *districts,* other than on the assumption that the cited sections were valid.

The judgment is affirmed with this modification. Neither party will recover costs.

GRADY, C. J., concurs.

FINLEY, J. (concurring in the result)—A question implicit in this appeal is whether, under the declaratory judgment act (RCW 7.24), the courts of this state have the power or jurisdiction to entertain and decide this case. This question is not argued by the parties. It concerns their status and whether the parties have a justiciable interest in the matter they are attempting to litigate. Secondly, there is a question (argued strongly by the parties) whether § 8 of chapter 156, Laws of 1951, as amended by § 1, chapter 206, Laws of 1953 (RCW (Sup. 1953) 3.14.010), is constitutional.

The opinion assumes without discussion that the answer to the first question must be in the affirmative. On the basis

of our decision in *Huntamer v. Coe,* 40 Wn. (2d) 767, 246 P. (2d) 489, I agree with the legal conclusion implicit in the assumption made by the opinion. Perhaps it should be pointed out here that in the *Huntamer* case the secretary of state had announced that all candidates for office at the 1952 general election would be required to execute the oath or affidavit specified in chapter 254, Laws of 1951. In the *Huntamer* case, we said:

"Plaintiffs, seeking an adjudication of alleged rights under our declaratory judgment act, instituted this suit in the superior court for Thurston county against the secretary of state, Earl Coe, in his capacity as chief election officer of the state of Washington. Specifically, plaintiffs sought to have § 16, p. 801, and subsection (e) of § 1, p. 794, of chapter 254, Laws of 1951, adjudged unconstitutional, null, and void.

"The trial court took jurisdiction of the case on the basis that the declaratory judgment act was applicable, and adjudged the above provisions of chapter 254, *supra* (hereinafter referred to as chapter 254), to be unconstitutional, null, and void. The secretary of state has appealed.

"The facts in this case may be briefly stated as follows: As found by the trial court, L. C. Huntamer, Thomas C. Rabbitt, Florence M. Morrissey, and James A. McDaniel, residents and electors of this state, desire and intend to become candidates, respectively, for governor, United States Congress, and the state legislature. . . .

"Plaintiffs state they will be prevented from becoming candidates for the respective offices because they cannot or will not execute the oath or affidavit as proposed by the secretary of state as they interpret and understand it and its effect.

"Because of the particular circumstances in this case, involving, as they do, some questions of considerable public interest and importance, we think the trial court acted properly in assuming jurisdiction to adjudicate certain questions in the case under our declaratory judgment statute. In saying this, we are fully aware of the decisions regarding our declaratory judgment act in the following cases: *Washington Beauty College v. Huse,* 195 Wash. 160, 80 P. (2d) 403; *Johnson v. State,* 187 Wash. 605, 60 P. (2d) 681, 106 A. L. R. 237; *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345; and *State ex rel. Yakima Amusement Co. v. Yakima County,* 192 Wash. 179, 73 P. (2d) 759.

"In Anderson, Actions for Declaratory Judgments 1413 (1951), the following statement is found:

" 'A petition for a declaratory judgment is particularly appropriate to determine the constitutionality of a statute when the parties desire, and the public need requires, a speedy determination of the public interest involved therein.'

"In *Allison v. Sharp,* 209 N. C. 477, 481, 184 S. E. 27, where the facts admittedly were somewhat different from those in the case at bar, the supreme court of North Carolina said:

" 'The plaintiffs and all the people of the State are vitally affected by the statute in controversy. While there was another remedy at law available to them, they have challenged the constitutionality of the statute under which they contend that the registrar refused them registration. Under such circumstances and conditions, the Uniform Declaratory Judgment Act affords a ready means of testing its validity.' "

On the question of the constitutionality of the statutory provisions under consideration, the opinion states:

"A discussion of the standards under which delegation of legislative authority is permissible, is not called for in this case. The specific mandate of the twenty-eighth amendment to the constitution of the state of Washington is too clear for interpretation. It unequivocally places the duty of fixing the number of justices of the peace upon the legislature exclusively, and leaves no room for the applicability of the doctrine of permissive delegation of legislative authority."

It appears to me that the above-quoted language means that the legislature cannot delegate, (a) to county commissioners, (b) to a justice court district committee, or (c) to any other agency of government (existing or created especially for the purpose), the authority to provide for justice of the peace courts in the various counties, even if definitive standards (population, area, or otherwise) are prescribed by the legislature for the guidance and control of the action of the recipients of the delegated power. I think the position, thus stated, is too extreme, and I cannot agree with it. It is my belief that, if adequate legislative standards had been written into the enactment, we would have a different question before us. Under such circumstances, I would not agree

that the legislative objective should be invalidated by this court on constitutional grounds. In other words, the constitutional defect I see in the statutory provision under consideration lies in the fact that it prescribes no workable, definitive standards; *i.e.,* no judicially acceptable limitations within which the delegated legislative power is to be exercised by the recipients thereof, the justice court district committees, and the boards of county commissioners.

On the basis of the reasons indicated, I concur in the result reached in the opinion.

HAMLEY and WEAVER, JJ., concur with FINLEY, J.

OLSON, J. (dissenting)—Appellants assign error to the finding of the trial court that the " 'unconstitutional acts of the legislature cited herein renders [*sic*] the plaintiffs uncertain and insecure with respect to their rights, status and legal relation.' " This assignment of error is not argued, but it goes to the jurisdiction of the court, and, in my opinion, it should be sustained. The parties cannot stipulate jurisdiction. *Adams v. Walla Walla,* 196 Wash. 268, 271, 82 P. (2d) 584 (1938); 1 Anderson, Declaratory Judgments (2d ed.), 227, § 124. They should not be permitted to accomplish the same result by failure to argue an assignment of error.

The applicable rule is stated in *Kahin v. Lewis,* 42 Wn. (2d) 897, 901, 259 P. (2d) 420 (1953):

"This court has many times held that, in order to invoke the jurisdiction of the court under the declaratory judgment act, there must be an actual, existing justiciable controversy between parties having opposing interests, which interests must be direct and substantial and involve an actual, as distinguished from a possible, potential, or contingent dispute. *Washington Beauty College v. Huse,* 195 Wash. 160, 80 P. (2d) 403; *State v. Fruitland Irr. Dist.,* 196 Wash. 11, 81 P. (2d) 844; *Adams v. Walla Walla,* 196 Wash. 268, 82 P. (2d) 584; *Brehm v. Retail Food & Drug Clerks Union,* 4 Wn. (2d) 98, 102 P. (2d) 685; *Conaway v. Time Oil Co.,* 34 Wn. (2d) 884, 210 P. (2d) 1012."

We said in *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341 (1937), in which the constitutionality of the declar-

atory judgment act was decided, that "Where the plaintiff has no legal interest, no judgment can be rendered." At p. 107, we stated that a proper case for relief under the act is presented when a plaintiff alleges

"(1) that he will be directly damaged in person or in property by enforcement of a statute; (2) that the defendant is charged with the duty of enforcing the statute; and (3) is enforcing it or is about to do so; and claims, upon these allegations, that such enforcement will result in the infringement of his (the plaintiff's) constitutional rights."

Also, see *Heisey v. Port of Tacoma,* 4 Wn. (2d) 76, 83 *et seq.,* 102 P. (2d) 258 (1940), where the quoted language is approved and other cases and authorities are cited, including Borchard, Declaratory Judgments. See *op. cit. supra* (2d ed.), pp. 15, 26 *et seq.;* 1 Anderson, Declaratory Judgments (2d ed.), 67, § 17, 260, § 138, citing *DeCano v. State,* 7 Wn. (2d) 613 [p. 616], 110 P. (2d) 627 (1941). Also, see *Conaway v. Time Oil Co.,* 34 Wn. (2d) 884, 895, 210 P. (2d) 1012 (1949), and *Seattle First National Bank v. Crosby,* 42 Wn. (2d) 234, 245, 254 P. (2d) 732 (1953), stating that a declaratory judgment action cannot be used to obtain purely advisory opinions.

None of the plaintiffs has a legal interest in the subject matter of this action. The terms of all justices of the peace expire before the effective date of the questioned act. Any incumbent justice can be no more than a potential candidate for the office for the subsequent term. His interest, if any, is too remote and uncertain to entitle him to invoke the declaratory judgment act. He can show no direct or substantial injury threatened to or suffered by him, in his person or property, by the enforcement of the questioned statutes, to present a justiciable issue in this case. Any opinion which a court may render at the instance of such a party is purely advisory.

For these reasons, it appears necessary to dismiss this action.

HILL, DONWORTH, and SCHWELLENBACH, JJ., concur with OLSON, J.