113 Wn.2d 178 (1989)
776 P.2d 1336
In the Matter of the Application for a Writ of Habeas Corpus of RAYMOND MOY ENG, Appellant.
THE CITY OF SEATTLE, Respondent,
v.
JEANETTA LOUIS, Petitioner.
THE CITY OF SEATTLE, Respondent,
v.
RICHARDO BOWMAN, Petitioner.
Nos. 54804-8, 55245-2, 55246-1.
The Supreme Court of Washington, En Banc.
August 3, 1989.
*180 Suzanne Lee Elliott of Associated Counsel for the Accused, for appellant and petitioners.
Douglas N. Jewett, City Attorney, and Isabel R. Safora and Charlotte Clark-Mahoney, Assistants, for respondent.
UTTER, J.
This case consolidates three cases  one habeas corpus petition and two direct appeals  all arising from municipal offenses in the City of Seattle (the City) and tried in that city's municipal court. The Superior Court for King County heard the original habeas petition and reviewed the latter two cases under its appellate powers over courts of limited jurisdiction. The Superior Court in each case found in the City's favor. The Court of Appeals declined to take discretionary review of the latter two cases. We accepted review of them along with the appeal of the Superior Court's denial of the habeas petition, brought directly to this court.
Appellant Eng and petitioners Louis and Bowman (hereinafter appellants) contend that the creation of Departments 4, 5, and 7 under RCW 35.20 represents an unconstitutional delegation of legislative power prohibited by Const. art. 4, § 10 (amend. 65). In addition they argue that, even if the departments are constitutional, they nonetheless were created in violation of state statute and city charter. For these reasons, appellants argue that the municipal judges did not have the jurisdiction to convict and sentence them.
We find that RCW 35.20 is constitutional and that the City created Departments 4 and 5 validly. Department 7, *181 however, was not validly created. Nonetheless, because the appellant convicted in that department concedes that the judge had de facto authority, his conviction still stands.
The relevant facts of each case are brief. In In re Eng, the City charged Raymond Eng with theft, Seattle Municipal Code (SMC) 12A.08.060, on February 24, 1987, in Department 7 of Seattle Municipal Court. The City later amended the charge to possession of a meter key, SMC 12A.08.105. The Municipal Court found him guilty and sentenced him to 1 year in jail, with 245 days of this sentence suspended. The court later suspended the remainder of Mr. Eng's sentence upon his agreement to inpatient alcohol treatment at Thunderbird House. Because of an incident at this treatment center, Mr. Eng was again charged with theft and the court reimposed the unserved portion of his suspended meter key sentence. Mr. Eng subsequently sought a writ of habeas corpus from the King County Superior Court in which he contested the legitimacy and jurisdiction of Department 7. He now appeals the denial of his petition.
In Seattle v. Louis, Jeanetta Louis faced a charge of theft, SMC 12A.08.060, in Seattle Municipal Court Department 4 on September 24, 1987. At trial, she moved for a change of venue to Departments 1, 2, or 3 or, in the alternative, dismissal. She argued that these were the only constitutionally and/or legally created departments in the Seattle municipal court system. The municipal judge denied this motion, the case proceeded to trial, and Ms. Louis was found guilty and sentenced to 1 year in jail.
In Seattle v. Bowman, Richardo Bowman was found guilty of driving while intoxicated, SMC 11.56.020, and negligent driving, SMC 11.58.005, in a jury trial before Seattle Municipal Court Department 5 on April 20, 1987. Rather than raise the issue at the outset  as Ms. Louis had  Mr. Bowman first challenged the legality and constitutionality of Department 5 in his appeal before King County Superior Court.

*182 I
Appellants challenge the constitutionality of portions of RCW 35.20, which creates municipal courts in cities of over 400,000. In particular, appellants find RCW 35.20.100 constitutionally infirm. This statute states in part:
There shall be three departments of the municipal court, which shall be designated as Department Nos. 1, 2 and 3: Provided, That when the administration of justice and the accomplishment of the work of the court make additional departments necessary, the legislative body of the city may create additional departments as they are needed.
Appellants base their argument on the premise that the judges in Seattle's municipal court system are, for constitutional purposes, "justices of the peace." This premise would place the municipal court under the strictures of Const. art. 4, § 10 (amend. 65), which states in relevant part:
The legislature shall determine the number of justices of the peace to be elected and shall prescribe by law the powers, duties and jurisdiction of justices of the peace: ...
This provision, appellants argue, places upon the Legislature the responsibility for setting the number of justices of the peace. Such responsibility cannot be delegated to a municipal legislative body.
The City, on the other hand, argues that the Seattle municipal court system was created pursuant to a different constitutional provision, Const. art. 4, § 12, which states:
The legislature shall prescribe by law the jurisdiction and powers of any of the inferior courts which may be established in pursuance of this Constitution.
The language of this provision, the City argues, does not restrict the Legislature's ability to delegate certain aspects of the authority to create and maintain "inferior courts." Among these, the City claims, is the ability to add additional departments to the Seattle Municipal Court. At the heart of this constitutional dispute, then, is whether the Seattle municipal court system is an "inferior court" under Const. art. 4, § 12 or a manifestation of justices of the peace under Const. art. 4, § 10 (amend. 65).
*183 The constitution does not provide a definition for "justice of the peace." Appellants contend that the drafters intended the term to apply to judges of lesser jurisdiction in incorporated cities. Appellants construe this definition from a statute roughly contemporary to the constitution's passage, the territorial Legislature's act of 1888 providing for elections of justices of the peace. This act located justices of the peace in "precincts" within cities. The act stated in part:
Each incorporated city in this Territory, together with any adjoining precincts, if any there are, lying partly within and partly without said city, shall, for the purposes of this act, and for fixing and limiting the number of justices of the peace to be elected in such city, be deemed and considered one precinct ...
Laws of 1887-88, ch. 68, § 3, p. 120.
Using their definition as a frame of reference, appellants trace the development of the justice of the peace statutes through the years. Not surprisingly, appellants interpret this history of the justice of the peace courts to include the Seattle municipal court system. Because these municipal judges, so the argument goes, are in actuality "justices of the peace," their number can only be set by the Legislature.
In response to the City's argument that the municipal court system represents an "inferior court," appellants contend that the Legislature must create "inferior courts" with specific language to that effect. As an example, appellants cite RCW 3.50.010, which authorizes cities of under 400,000 to create municipal courts outside of the state district court system: "Any city or town with a population of four hundred thousand or less may by ordinance provide for an inferior court to be known and designated as a municipal court...". Because the Legislature did not make such a designation in RCW 35.20, they conclude that Seattle's municipal courts are "justices of the peace," apparently by default.
In addition, appellants argue that because RCW 3.50.040 provides for municipal court judges to be appointed by the mayor of the city, appellants maintain that "inferior court" *184 judges are appointed, not elected. Based on this assumption, appellants conclude that if a "judge in an incorporated city" is elected to office, he or she is a justice of the peace.
[1] Appellants' historical argument fails because it takes only a limited and selective view of the constitution's language and of the body of statutes creating Washington's court system. This court has long held that in construing a constitutional provision, one must view the instrument as a whole and give effect to all of its provisions harmoniously. See State ex rel. Wolfe v. Parmenter, 50 Wash. 164, 96 P. 1047 (1908); Sears v. Western Thrift Stores of Olympia, Inc., 10 Wn.2d 372, 116 P.2d 756 (1941); Farris v. Munro, 99 Wn.2d 326, 662 P.2d 821 (1983). With this rule in mind, it follows that neither Const. art. 4, § 10 (amend. 65) nor Const. art. 4, § 12 can be construed to bypass the other. Section 10 cannot prohibit the flexibility implied by section 12, and section 12 cannot bypass and render meaningless the strict requirements of section 10.
[2, 3] A complete understanding of these two constitutional provisions requires a careful reading of the unifying section of the constitution's judicial article, Const. art. 4, § 1:
The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide.
(Italics ours.) As the emphasized words of section 1 indicate, the Legislature is mandated to create the justice of the peace courts. Along with this mandate comes the Legislature's responsibility for setting the number of justices of the peace in section 10. The constitution, however, gives the Legislature more flexibility in creating other kinds of "inferior courts" as the need arises. Part of this flexibility is the ability to delegate the power to set the number of judges in these courts.
Because the constitution mandates the creation of justice of the peace courts, it is logical for the Legislature to identify these courts in legislation specifically, rather than so identifying the "inferior courts," as appellants suggest. A *185 careful and complete look at the justice of the peace legislation over the years reflects this conclusion. In fact, all but one of the statutes that appellants cite specifically refer to justices of the peace. The one that differs is none other than the Seattle municipal court statute.
Further, appellants' suggestion concerning the specific identification of "inferior courts" fails to take into account the Court Improvement Act of 1984, which converted the justices of the peace into the district court system. Laws of 1984, ch. 258. This legislation, unlike RCW 35.20, specifically stated that what the constitution identifies as justices of the peace will henceforth be termed district court judges. See RCW 3.30.015. This specific identification reflects the constitutional directive to vest judicial power in justices of the peace. RCW Title 3, in which this act is codified, is identified as "District Courts ... (Formerly: Justice Courts...)."
RCW 3.50.010, the alternative municipal court provision for cities under 400,000 cited by appellants, is found in RCW Title 3. This codification, found under the title that fulfills the Legislature's duty to create justice of the peace courts, explains the specific identification of these bodies as "inferior courts." Such identification would not be required for an "inferior court" codified in a different title, such as RCW 35.20.[1]
It is true that when the statute that is now RCW 35.20 was passed, it contained a provision allowing justices of the peace who were also police court judges to become judges in the newly created municipal court. See Laws of 1955, ch. 290, § 24, p. 1297. In contrast to the Court Improvement Act of 1984 cited above, this provision does not provide for the continuing identification of municipal judges as justices *186 of the peace. Instead, it converts justices of the peace who were appointed police judges into something else: municipal court judges. Thus, it cannot be linked constitutionally with the Legislature's duty to create justices of the peace. Subsequent versions of this statute reflect this interpretation. See RCW 35.20.240 ("First judges  Transfer of equipment" (italics ours)); see also Reviser's note following RCW 35.20.240 ("Justices of the peace and courts to be construed to mean district judges and courts: See RCW 3.30.015").
Because of the lack of specific identification as a justice of the peace court, the Seattle municipal court system is, for constitutional purposes, an "inferior court." In addition, the statutory provision allowing concurrent jurisdiction between these municipal courts and the district/justice of the peace courts, further identifies the former as an entity separate from the latter system. See RCW 35.20.250. This statute also allows for concurrent jurisdiction with the superior courts: surely appellants do not suggest that the Seattle municipal courts are the "same" as this system.
The justice court act of 1961, Laws of 1961, ch. 299, provides further evidence that the Seattle courts are separate from justices of the peace. That act contained a provision allowing Seattle to maintain its court system as if the act "had never been enacted." Laws of 1961, ch. 299, § 2; see also RCW 3.30.020 (present codification). Seattle chose to exercise this option. See Seattle City Council Resolution 18981, Oct. 23, 1961. This provision allowing Seattle to opt out of the justice court system underscores the notion that the municipal courts represented a distinct entity.
RCW 3.30.020 (now applying to district court judges) did reduce proportionately the amount of justices of the peace available to Seattle and King County. Appellants take this to indicate that the Legislature identified the municipal court judges as the constitutional equivalents of justices of the peace. Without specific statutory language to this effect, however, one cannot make this assumption. The Legislature just as easily could have sought to avoid a glut of courts of lesser jurisdiction, rather than following a constitutional *187 directive. Therefore, appellants' argument here is not convincing.
Appellants cite a number of cases which they claim construe the limitations of Const. art. 4, § 10 (amend. 65) to apply to the Seattle municipal court system. See In re Cloherty, 2 Wash. 137, 27 P. 1064 (1891); State ex rel. Fugita v. Milroy, 71 Wash. 592, 129 P. 384 (1913); Manus v. Snohomish Cy. Justice Court Dist. Comm., 44 Wn.2d 893, 271 P.2d 707 (1954); Long v. Odell, 60 Wn.2d 151, 372 P.2d 548 (1962); Seattle v. Filson, 98 Wn.2d 66, 653 P.2d 608 (1982).
Despite appellants' contention, neither Cloherty nor Fugita actually deal with Const. art. 4, § 10 (amend. 65), the justice of the peace provision. At issue in those cases was whether a municipality could create a municipal or police court without authorization by the Washington State Legislature. See Fugita, 71 Wash. at 595; Cloherty, 2 Wash. at 139, 146. Even on the basis of this issue, Cloherty and Fugita are inapplicable to the present case. Under RCW 35.20, the City of Seattle did not attempt to create a court. It merely added more departments to a court already validly created by the Legislature through statute.
In their historical analysis, appellants overlook legislation which, in 1891, created a municipal court system in cities of over 20,000  cities of the first class. See Laws of 1891, ch. 64. This legislation, passed February 28, 1891, may have been an effort to follow up on the impact of the Cloherty decision of February 20 of that year, which held that no statute had authorized the police court in Tacoma, a first class city. This statute provided for change of venue between the municipal courts and justice of the peace courts, thus identifying them as distinct bodies. Laws of 1891, ch. 64, § 4, p. 109. This distinction is reinforced by a proviso that the act would not affect the jurisdiction of that latter court. Laws of 1891, ch. 64, § 16, p. 113. In section 17, the act states that the new municipal courts would "take the place of and supersede the police courts now existing in any of the cities to which this act applies", thus increasing *188 the likelihood that it was in reaction to Cloherty. Therefore, the Legislature likely assumed that the police courts it replaced were "inferior courts," not justices of the peace  Cloherty had specifically identified the Tacoma police court as "inferior."[2] Further, the 1891 act made the municipal courts courts of record. Because Const. art. 4, § 11 prohibits justices of the peace from becoming courts of record, the Legislature had to have created "inferior courts" with the 1891 act. Thus, the 1891 act establishes a link between the municipal courts and "inferior courts" and sets the precedent for identifying future municipal courts as such.
Two other cases which appellants cite, Manus and Long, directly address legislation concerning justices of the peace but have nothing to do with the Seattle municipal court system. Essentially, these two cases stand for the uncontested proposition that the Legislature cannot delegate the power to determine the number of justices of the peace. See Manus, 44 Wn.2d at 896; Long, 60 Wn.2d at 152. Because appellants' argument that the Seattle municipal judges are justices of the peace fails, these cases are not relevant.
Appellants are correct in arguing that Seattle v. Filson, supra, supports their position. The issue in that case concerned whether the Seattle municipal courts were courts of record. In holding the courts were not, this court stated that RCW 35.20 was enacted pursuant to Const. art. 4, § 10 (amend. 65)  the justice of the peace provision. 98 Wn.2d at 68. We continued:
At the time the constitution was adopted, the justices of the peace were the only courts inferior to the superior court, and they exercised all of the jurisdiction now distributed among other courts of limited jurisdiction, including municipal courts. Thus, as we understand the import of Const. art. 4, § 11, the Legislature is not empowered to make an inferior court a court of record.
98 Wn.2d at 69.
*189 In Filson, however, we were not presented with arguments concerning the differences  and thus the need for harmony  between sections 10 and 12. As a result, the reasoning behind our decision did not take these crucial distinctions into account. Because of this, we overrule the analysis of Filson to the extent it conflicts with the present case. We leave undisturbed Filson's ultimate holding that the Seattle municipal courts are not courts of record.
For reasons of historical interpretation and constitutional construction, the Seattle municipal judges are not justices of the peace. Therefore, the City's ability to add new departments to that court is not an unconstitutional delegation of legislative power. These courts are constitutionally legitimate.

II
Appellants next contend that, if Departments 4, 5, and 7 are constitutional, they were nonetheless created contrary to state law and the Seattle City Charter. Because Departments 4 and 5 present issues different from Department 7, we address these two departments first.
RCW 35.20.100 allows the legislative body of Seattle to create additional departments of the municipal court as they are needed. These additional departments, then, are to be created by legislative, rather than administrative or executive, acts. Regarding such acts, the Seattle City Charter requires that:
Every legislative act of said City shall be by ordinance. Every ordinance shall be clearly entitled and shall contain but one subject, which shall be clearly expressed in its title....
Seattle City Charter, art. 4, § 7. Therefore, if Departments 4, 5, and 7 were validly created, such creation would have to have been accomplished by ordinances "clearly entitled" and containing "but one subject."
The structure of Seattle's municipal court system is set out at section 3.33.040 of the SMC. This section states, in part:
A. The Municipal Court shall consist of six (6) judicial departments, as follows:

*190 1. Departments 1-3 established pursuant to RCW 35.20.100; and
2. Departments 4-6 heretofore established pursuant to RCW 35.20.100 by Ordinances 101811, 108666 and 110900.
The ordinances mentioned in SMC 3.33.040(A)(2) do not specifically identify themselves as creating additional departments to the municipal court. Ordinances 108666 and 110900 adopted the City's budget for the years 1980 and 1983, respectively. Ordinance 101811, dating from 1973, does mention the city council's resolve to seek federal funds to establish  eventually  a fourth department of the municipal court. It does not, however, actually establish that department. The City claims in its supplemental brief that Department 4 was created by ordinance 101630, which adopted the City's general budget for 1973.
A close inspection of the annual budgets referred to in ordinances 101630, 108666, and 110900 reveals that the allotments for municipal judges' salaries were increased by one position each time. The City argued at the Superior Court appeal of Louis that it is not required to pass separately titled ordinances to create more departments. In addition, the City maintained that "[b]y appropriating by ordinance the necessary monies to operate full-time municipal court departments 4, 5 and 6, and creating positions therefor, the Seattle City Council `created' those departments in accordance with RCW 35.20.100." Clerk's Papers (Seattle v. Louis), at 41. In its brief to this court, the City claims that it need only "express the will of its government" to create additional departments. The City cites Twigg v. Aberdeen Mun. Court, 50 Wn. App. 594, 600, 749 P.2d 745 (1988), for this assertion.
Twigg does not apply here. At issue in that case was whether the City of Aberdeen was required to pass an ordinance to continue the operation of its municipal court after the passage of the justice court act. The Court of Appeals looked to the statute allowing for such continuation, former RCW 3.50.470 (Laws of 1961, ch. 299, § 96), and determined that it did not require the City to pass an ordinance *191 to do so. The court found that "`[w]here the law is silent as to the mode of procedure, no particular formality in the enactment of an ordinance need be adopted. In the absence of other requirements it is only necessary that there be sufficient proof of the will of the governing body".'" 50 Wn. App. at 599-600, quoting Hoquiam v. Strid, 46 Wn. App. 457, 460, 731 P.2d 8, review denied, 108 Wn.2d 1011 (1987). In the present case, RCW 35.20.100 requires the City to use its legislative body in creating additional departments to its municipal court. The City's own charter requires that such a legislative action be done by specifically entitled ordinance. The law in this case, then, is not silent on procedure.
[4] The budget ordinances do not meet the specificity required by RCW 35.20.100 and the city charter for legislation creating new municipal court departments. City Charter art. 4, § 7 aims to provide notice of the content of the City's legislative actions; notice is a crucial component of the democratic process. The budget documents simply do not provide comprehensible notice that the City's legislative body intends to create another municipal court department.
[5] Nevertheless, while the budget ordinances by themselves do not fulfill the charter's requirements, the provision in SMC 3.33.040 quoted above serves more than adequate notice, albeit after the fact, that the departments were created. This code provision explicitly identifies the City's court departments and the authority upon which they exist. Thus, the City officially created half of its municipal court departments years after it "created" them in practice.
While Departments 4 and 5 are legitimate, albeit belatedly, the same cannot be said for Department 7. The ultimate issue here is whether the judge in what is called Department 7 had jurisdiction.
Department 7 is the City's designation for the courtroom in the new King County Jail. When the jail was first completed, the City arranged with King County to use the courtroom for arraignments. Soon, however, the increasing *192 municipal caseload required the City to use the courtroom for trials. It appears that the City has operated this courtroom as Department 7 since 1986. Counsel at oral argument conceded that presently the City operates Department 7 seven days a week. According to counsel, it is now the busiest of Seattle's municipal courtrooms.
The City maintains that it has not created a permanent, fully funded department with Department 7. Rather, it contends that it is exercising its statutory power to employ judicial officers and judges pro tempore to assist with the caseload of the established municipal court departments. The question, then, becomes whether the judge exceeded the authority allowed in the judge pro tempore statute.
The "judge" presiding in this courtroom was originally designated as a "Commissioner/Judicial Officer." See Clerk's Papers (In re Eng), at 59, 62 (new position request forms for the Seattle budgeting process for 1984 and 1985). The City, in its brief, now terms this person as a judicial officer and judge pro tempore. RCW 35.20 does provide for both of these positions. Their functions, although distinct, may be combined. Judicial officers, authorized by RCW 35.20.205, may be employed by the City "to assist in the administration of justice and the accomplishment of the work of the court". The duties of these officers are "judicial in nature." The statute also authorizes judicial officers "to hear and determine cases involving the commission of traffic infractions". This explicit authorization, in the context of the subordinate role implied by the rest of the statute, indicates that traffic infractions are the only cases judicial officers can "hear and determine" on their own. The mayor may also appoint these officers as judges pro tempore.
Unlike the judicial officer position, judges pro tempore, under RCW 35.20.200, can only be appointed by the mayor. They may serve in the absence of or in addition to the regular judges of the municipal court. The statute grants them the full powers of a regular municipal judge and makes it clear that their appointment "shall be for the term of office *193 of the regular judges unless sooner removed in the same manner as they were appointed."
The two offices described above each have their own limitations. The judicial officers may only "hear and determine" traffic violations but they may be "employed" in an open-ended fashion. The judges pro tempore, on the other hand, have the same powers as the other municipal judges but serve limited terms. The City attempts to blur the two offices and have the best of both worlds. It has operated Department 7 since 1986, staffed by a person who acts like a judge but who was originally hired under the title of half-time commissioner/judicial officer, at least as evidenced by the 1985 budget request.
This situation resembles what appellants argue is a "subset of permanent pro tempore judges to hear and decide criminal matters." Brief of Appellant, at 17. Such an arrangement, appellants suggest, goes beyond the authority granted in RCW 35.20 because this "judge" is not held accountable to the public by the elective process. Appellants contend that the arrangement deprives the public of its right to vote, citing Reynolds v. Sims, 377 U.S. 533, 12 L.Ed.2d 506, 84 S.Ct. 1362 (1964) and Foster v. Sunnyside Vly. Irrig. Dist., 102 Wn.2d 395, 687 P.2d 841 (1984).
[6] The City has not validly created Department 7. It has therefore abused the provisions allowing for judges pro tempore. As appellants point out, RCW 35.20.190 allows the mayor to appoint replacements for the permanent judges so long as these replacements are placed on the ballot at the next city election. Appellants correctly argue that the judge pro tempore provision cannot be construed to circumvent the former. See 2A C. Sands, Statutory Construction § 46.05 (1973).
To construe the municipal court statute as a harmonious whole, one must interpret the concept of judge pro tempore strictly. The term "pro tempore" means "[f]or the time being; temporarily; provisionally." Black's Law Dictionary 639 (5th ed. 1983). An indefinitely appointed or continually reappointed judge pro tempore is a contradiction in terms. *194 The time in which a judge pro tempore serves, then, should not run past the next municipal election as envisioned in RCW 35.20.190.
In addition, RCW 35.20.200 allows for the appointment of such judges "in the absence of" or "in addition to the regular judges". The word "judges" is central here: it has a different meaning than the word "departments." The City has used the judge pro tempore not in addition to the regular judges, but in addition to the regular departments, and in so doing allows him to function as a separate department. This is beyond the scope of RCW 35.20.200. The use of the word "departments" in RCW 35.20.100  in relation to the City's legislative body creating them  indicates that the Legislature was aware of the distinction between these two words.
Further, RCW 35.20.100 indicates that only the City's legislative body, acting through the proper legislative procedures, can authorize the creation of a municipal court department. Here, the City claims that Department 7 was not created at all.[3] Nonetheless, it functioned as a department, complete with clerk, bailiff and other staff, handling more cases than the other, legitimate departments. To Mr. Eng and the other defendants passing through Department 7, the City's disclaimer regarding its act of creation makes little difference. Thus, although the City did not create the department properly, it held the department out to the public as a legitimate arm of its municipal court.
[7] Because the language of RCW 35.20.100 restricts to the City's legislative body the authority for creating new departments and because RCW 35.20.200 only authorizes *195 the appointment of pro tempore judges in addition to judges rather than departments, we conclude that the City can only appoint judges pro tempore to serve in an already validly created department under an elected judge. To appoint such temporary and provisional judges to serve full time in a separate courtroom is beyond the scope of RCW 35.20.200.[4] Because Department 7's function is beyond the scope of the judge pro tempore statute, its actions are invalid. The "permanent judge pro tempore" exceeded the jurisdiction envisioned by RCW 35.20.

III
[8] Although we find that the judge in Department 7 lacked jurisdiction, appellant Eng's counsel concedes that this judge had de facto authority over him. Therefore, Mr. Eng's conviction remains valid. Because Departments 4 and 5 are constitutionally and legally legitimate, the convictions of Ms. Louis and Mr. Bowman are also affirmed.
CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.
Reconsideration denied November 8, 1989.
NOTES
[1] Appellants' reliance on the appointment of judges as another characteristic of the "inferior courts" relies solely on the specific example of RCW 3.50.040. Having cited no other examples or any direct authority, appellants do not show this to be a constitutionally directed characteristic. Indeed, other "inferior courts" have provided for judicial elections. See, e.g., Laws of 1891, ch. 64 (allowing for the creation of municipal courts in cities of over 20,000).
[2] In addition, the Cloherty court identified the justices of the peace as the remaining body to hear municipal cases after it found the Tacoma court invalid. A legislative act creating new municipal courts against this background could only have been intended to be distinct from the existing justice of the peace courts.
[3] The City's arguments on the existence or nonexistence of Departments 4, 5, and 7, when taken as a whole, present inherent contradictions. If Department 7, as the City argues, was in fact not created, it was done so in the same manner as Departments 4, 5, and 6 were created: by inclusion in the budget process and passed in the general budget ordinance. To borrow a term used by the City, there is no difference in the outward manifestation of the "expression of the will of government" regarding Departments 4 and 5 on the one hand and Department 7 on the other. The only tangible difference between the existent and the nonexistent is the confirmation of Departments 4, 5, and 6 in SMC 3.33.040.
[4] The scheme in Department 7 also may present due process problems. It subjects criminal defendants to judges who have not gone through the process, set up by the Legislature, by which the public selects its judiciary. Further, Const. art. 4, § 7 of our state's constitution, in reference to judges pro tempore in the superior courts, mandates that the litigating parties agree in writing to the use of the pro tempore judge. We have held that this is a jurisdictional requirement, and failure to satisfy it will result in all of the judge's acts being null and void. See National Bank of Wash. v. McCrillis, 15 Wn.2d 345, 130 P.2d 901, 144 A.L.R. 1197 (1942). Counsel for the City conceded at oral argument that the municipal court rules do not provide for such a jurisdictional agreement. The only way litigants can challenge the appointment of a judge pro tempore is to submit an affidavit of prejudice. While we cannot construe Const. art. 4, § 7 beyond the limits of its application to superior courts, we note the due process implications of the City's arrangement.