[No. 31134. *En Banc.* August 15, 1949.]

BENNIE BERNDSON, *Respondent,* v. GRAYSTONE MATERIALS COMPANY, *Respondent,* THE STATE OF WASHINGTON
*et al., Appellants.*[1]

*The Attorney General* and *William J. Millard, Jr., Assistant,* for appellants.

[1]Reported in 209 P. (2d) 326.

*Clarke, Clarke & Albertson,* for respondent Berndson.

*Kahin, Carmody & Pearson,* for respondent Graystone Materials Company.

Robinson, J.—On March 9, 1949, the State Senate passed senate bill No. 164, repealing certain sections of our then existing unemployment compensation statute and adding some new sections thereto. The House of Representatives had already acted upon, and passed, the bill on March 7th. On March 21, 1949, the governor approved the act, with the exception of section 34, which he vetoed. That section read as follows:

"Sec. 34. *Effective Date of Act.* An emergency exists and this act is necessary for the preservation of the public peace, health, safety and welfare, and the provisions of sections 6 to 33, inclusive, shall take effect on the first day of April, 1949." Laws of 1949, chapter 235, § 34, p. 899.

Since the governor vetoed the section above quoted, the act did not become effective on April 1, 1949. However, in due course, it would have become effective at twelve midnight of June 8, 1949, but for facts shown in the record by the following certificate of the secretary of state:

"To All To Whom These Presents Shall Come

"I, Earl Coe, Secretary of State of the State of Washington and custodian of the Seal of said State, do hereby certify that on or before June 8, 1949, Lula M. Fairbanks as sponsor of Referendum Measure No. 28 referring all but the first five sections of Chapter 235, Laws of 1949, filed with my office signature petitions bearing the total of 77,202 signatures. As of this date, the progress of the canvassing of the signature petitions reveals that 60,591 signatures have been checked of which 55,096 signatures have been accepted and 5,495 signatures rejected. I further certify that should the remaining unchecked signatures totaling 16,611 be revealed as duplicate signatures of those already accepted, the final canvass would then establish the sponsor with at least 38,485 valid signatures as provided by Remington's Revised Statutes Section 5411.

"Since the seventh amendment to the State Constitution requires only 30,000 valid signatures, I further certify that Referendum Measure No. 28 will be certified to the Novem-

ber 7, 1950 state general election ballot for final approval or rejection by the electorate.

"In Testimony Whereof, I have hereunto set my hand and affixed hereto the Seal of the State of Washington. Done at the Capitol, at Olympia, this 30th day of June A. D. 1949.

"[Seal of the State of        Earl Coe [signed]
    Washington]            Secretary of State."

It is declared, in Art. II, § 1, of the seventh amendment to the state constitution, that the people

". . . *reserve power, at their own option, to approve or reject at the polls any act, item, section or part of any bill, act or law passed by the legislature.*" (Italics ours.) 1 Rem. Rev. Stat., p. 519.

It is further declared, in Art. II, § 1 (d):

"Any measure initiated by the people *or referred to the people as herein provided* shall take effect and become the law if it is approved by a majority of the votes cast thereon: Provided, that the vote cast upon such question or measure shall equal one-third of the total votes cast at such election and not otherwise. *Such measure shall be in operation on and after the thirtieth day after the election at which it is approved.* . . ." 1 Rem. Rev. Stat., pp. 520, 521. (Italics ours.)

When does a legislative act, or portion thereof, which is referred to the people by a valid referendum petition, become effective and operative? The court specifically answered that question in the opinion in *Wynand v. Department of Labor and Industries,* 21 Wn. (2d) 805, 809, 153 P. (2d) 302. We said, after quoting the same portion of the seventh amendment to the constitution, last above quoted:

"It is said, of a measure referred to the people, that it 'shall be in operation' on and after the thirtieth day after the election at which it is approved, which, in the case of chapter 209, was December 3, 1942. The phrase 'shall be in operation' is equivalent to 'shall become operative,' 'shall be effective,' or 'go into effect.' . . .

"Clearly, it is the affirmative vote of the people which gives a referred measure the status of law. Under our statutes (Rem. Rev. Stat., § 5341 [P.C. § 2189]), the vote of the people on such a measure does not of itself become effective and operative until canvassed by the secretary of

state and the result proclaimed by the governor, which acts are required to be performed within thirty days after the election and may, therefore, not be performed until the twenty-ninth day. This is, presumably, the reason why amendment seven to the constitution provides that, if a referred measure is approved by the vote of the people, it shall become operative on and after the thirtieth day after the election at which it was approved."

See, also, *Lynch v. Department of Labor and Industries,* 19 Wn. (2d) 802, 145 P. (2d) 265, and *Skidmore v. Clausen,* 116 Wash. 403, 405, 199 Pac. 727, which, since it involves a referendum, is more nearly in point.

Since, as has been hitherto shown by the certificate of the secretary of state, a valid referendum petition, referring portions of chapter 235, Laws of 1949, to a vote of the people, will be submitted for approval or rejection by the electorate on November 7, 1950, it clearly follows that those portions of chapter 235, Laws of 1949, which have been thus referred, are not now effective and operative, and cannot become so unless and until a canvass of the votes cast, which may be made within thirty days after the general election in November, 1950, shows that they have been approved by the electorate. The secretary of state's certificate, hereinbefore quoted, certifies that referendum measure No. 28 validly refers all but the first five sections of chapter 235, Laws of 1949. It, therefore, lawfully refers § 21 of that chapter to the vote of the people. It is with that section that this cause is primarily concerned. It reads as follows:

"Sec. 21. A new section to be known hereafter as section 150 is hereby added to chapter 35 of the Laws of 1945, to read as follows:

"Section 150. *Disability Contributions.* On and after July 1, 1949, each employer subject to the Unemployment Compensation Act except as exempted by the provisions of this chapter shall deduct from 'wages' paid individuals in his employment a contribution equal to one per cent (1%) of such 'wages,' which contributions the employer shall pay into the Disability Compensation Fund. All moneys deducted by an employer from 'wages' paid for employment shall be held in trust by such employer for the sole and exclusive purpose of payment to the Disability Compensation

Fund. If at any pay period the employer fails to deduct the employee contribution from 'wages' paid such deduction must be withheld from the 'wages' paid at the next pay period or the employer alone shall be liable for such contribution and the same shall not subsequently be deducted by the employer from 'wages' paid." Laws of 1949, chapter 235, § 21, p. 889.

It is very easy to understand why both employers and employees are vitally concerned as to whether or not that section has become effective, and, if not, when and under what circumstances it can become so.

This action was brought by Bennie Berndson, who will be referred to in this opinion as the plaintiff, naming his employer, Graystone Materials Company, as defendant, by which appellation it will be referred to in this opinion. Plaintiff also named as defendants the state of Washington, A. F. Hardy, commissioner of employment security department of the state of Washington, and George Plamondon, treasurer of disability compensation funds. This appeal having been taken by the state and its officers above named, they will be collectively referred to as the appellants.

The plaintiff alleged that, for several years last past, he had been employed, and is now employed, in Olympia by the defendant, and is paid a monthly salary at the end of each pay period. He further alleged that § 21, chapter 235, Laws of 1949, has been duly referred to the people for vote at the next general election to be held in November, 1950, and, therefore, is not presently operative or effective, but that, notwithstanding that, the defendant has threatened to deduct from his wages, commencing July 1, 1949, a contribution equal to one per cent thereof, and pay it into the disability compensation fund, as provided in § 21, chapter 235, Laws of 1949; and further alleged that, unless restrained from so doing, defendant would so do, and continue to do so, at the end of each and every pay period, and that the state will, unless enjoined, undertake to administer the whole of § 21, chapter 235, during the period in which it is inoperative.

Plaintiff further alleged that the threatened acts of the defendant, employer, would constitute a violation of his con-

stitutional rights and deprive him of property without due process of law, and that any attempt by the state to administer § 21, chapter 235, Laws of 1949, unless and until that section has been approved by the vote of the people, would impair the obligation of his contract of employment.

Plaintiff prayed for a declaratory judgment, declaring and establishing his rights in the matter, and an injunction restraining the defendant, employer, from making the threatened deductions provided for by § 21, and also for an injunction restraining the appellants, state officers, from administering that portion of chapter 235, on the ground that it is not operative and cannot be enforced unless and until it is approved by the people at the general election in 1950.

The defendant, employer, Graystone Materials Company, in answering plaintiff's complaint, admitted substantially all of the factual allegations thereof, and generally denied the legal conclusions therein. It attached, and included in its answer, a cross-complaint against the plaintiff and the appellants, state officers, in which it alleged that, if § 21 should be sustained by the people in the general election of November, 1950, the state will demand of it, and attempt to collect from it, disability contributions on account of all wages paid to the plaintiff by defendant subsequent to the first day of July, 1949. It also prayed for a declaration that no deduction from the plaintiff can legally be made by virtue of § 21, unless and until that section be approved by a vote of the people at the general election in November, 1950, and that the court further declare and determine that it shall not be liable for any contribution to the disability compensation fund established by chapter 235, Laws of 1949, on account of any wages paid by the defendant to the plaintiff for any pay period prior to such approval of the legislative enactment by the people of the state.

The state filed a general demurrer to the plaintiff's complaint, and also filed a general demurrer to the defendant employer's cross-complaint. Since the pleadings raised no issue of fact, when the case came on for hearing before the superior court the parties elected not to plead further and

stipulated that the matter be submitted to the court on the pleadings and without the introduction of further evidence.

After hearing argument of counsel, the court rendered a comprehensive memorandum opinion, analyzing and stating its views as to all the questions presented.

On July 7, 1949, the trial court entered a comprehensive judgment and decree. In this decree, the state's demurrers were overruled and the declaratory relief prayed for by the plaintiff, employee, in his complaint, and by the defendant, employer, in its cross-complaint, was afforded. This decree was necessarily long, too long for quotation in this opinion. We will, therefore, state only the substance thereof.

It was ordered, adjudged, and decreed that, since §§ 6 to 33, inclusive, of chapter 235, Laws of 1949, have been referred to a vote of the people at the next general election in November, 1950, by a valid referendum petition, the referred sections of the chapter, including § 21, are presently ineffective and inoperative; and it is further adjudged that, under the circumstances, they cannot become effective or operative unless and until it is found, upon a canvass of the votes cast at that election, that those portions of the chapter have been approved by the people

The judgment enjoined the Graystone Materials Company from making deductions from the wages of the plaintiff during any pay period prior to the thirtieth day after the referred portion of the act was approved by the electorate at the 1950 general election, and declared that the defendant, employer, be relieved and absolved from any liability with respect to contributions or payment into the fund prior to that time. The other defendants, and all other state officers now or hereafter charged with the duty of administering the act, were enjoined from enforcing the sections that have been subjected to referendum until thirty days after the referred portions of the act have been approved, and further restrained from collecting, or attempting to collect, from defendant, employer, Graystone Materials Company, or from any other employer in the state of Washington, subject to the provisions of chapter 235, anything by way

of contributions from wages due, or to become due, to the plaintiff, or any other employee subject to the act, for any prior pay period until thirty days after the referred portions of chapter 235 be approved at the November 1950 general election.

Appellants make no contention that the injunctive relief granted in the decree was erroneously or improvidently granted. They urge that the decree of the trial court be reversed, principally on the ground that the declaratory relief sought by the plaintiff, and awarded by the court in the decree, was not permissible under our declaratory judgment act, which, in so far as here material, reads as follows:

"A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." Rem. Rev. Stat. (Sup.), § 784-2 [P.P.C. § 65-3].

Appellants take the position that chapter 235, or at least those portions of it which have been referred to the people, are not yet statutes, and may never become so, and quote the following from Borchard, Declaratory Judgments (2d ed.), p. 50:

"When the attack is upon a statute, the plaintiff must show not only the existence of the statute, but the fact that he is personally affected by it to an extent warranting judicial relief."

But, in the instant case, the plaintiff is not really attacking the statute itself, but, rather, certain interpretations made of chapter 235, pursuant to which and in accordance with which the appellants, state officers, are alleged about to enforce it, despite the referendum as to portions thereof. It is said, in Anderson, Declaratory Judgments, 192, § 68:

"However, it is settled beyond peradventure of a doubt, notwithstanding some decisions apparently to the contrary, that a declaratory judgment action will lie to determine the validity of rights under a statute, even though no steps have been taken to enforce it, or that the effective date of the statute, when it would be subject to enforcement, has not arrived."

The author cites, as authority for the above statement, and we think rightly, this court's opinion in *Acme Finance Co. v. Huse*, 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345. See, also, *Pierce v. Society of Sisters*, 268 U. S. 510, 69 L. Ed. 1070, 45 S. Ct. 571, 39 A. L. R. 468, and *State ex rel. Yakima Amusement Co. v. Yakima County*, 192 Wash. 179, 183, 185, 73 P. (2d) 759.

In the annotation following *Acme Finance Co. v. Huse*, *supra*, in 114 A. L. R. 1365, 1366, it is said:

"In *Acme Finance Co. v. Huse*, (Wash.) (reported herewith) ante, 1345, after tracing the history of American declaratory judgment legislation, a majority of the court held that the Washington Declaratory Judgment Act (apparently the Uniform Act) empowers the courts to declare a statute unconstitutional even though not yet in effect, if the plaintiff alleges '(1) that he will be directly damaged in person or in property by enforcement of a statute; (2) that the defendant is charged with the duty of enforcing the statute; and (3) is enforcing it or is about to do so, and claims, upon these allegations, that such enforcement will result in the infringement of his (the plaintiff's) constitutional rights.'"

In this case, the plaintiff, employee, alleged that he would be damaged by a premature enforcement of chapter 235, and both the plaintiff, employee, and the defendant, employer, alleged that the appellants, state officers, charged with enforcing the act, were threatening to enforce it presently, and both claimed that such enforcement would result in the infringement of their constitutional rights; and the allegations that the appellants, state officers, were about to enforce the provisions of the act were admitted by them

by filing general demurrers to the plaintiff employee's complaint and the defendant employer's cross-complaint.

The decree from which this appeal was taken will stand affirmed. It is so ordered.

BEALS, STEINERT, JEFFERS, MALLERY, SCHWELLENBACH, HILL, and GRADY, JJ., concur.

SIMPSON, C. J., concurs in the result.

[1]Reported in 209 P. (2d) 367.