[No. 37441.    En Banc.    February 17, 1966.]

LOUIS ROSSO, *Respondent*, v. THE STATE PERSONNEL BOARD et al., *Appellants.*\*

*\*Reported in 411 P.2d 138.

*The Attorney General* and *R. Ted Bottiger, Assistant,* for appellants.

*Corbett, Siderius & Lonergan* and *Maurice M. Epstein,* for respondent.

HAMILTON, J.—Plaintiff Rosso (respondent here) is the manager of a state owned liquor store in West Seattle. As such, he is an employee of the Washington State Liquor Control Board. On April 22, 1963, pursuant to Article 20, § 2, of the Merit System Rules[1] as promulgated by the State Personnel Board, the Retail Liquor Clerks' Union No. 1640 filed a request with the personnel board for a determination of an appropriate bargaining unit for employees of the liquor board. The personnel board scheduled a public hearing upon the request for May 28, 1963. On May 21, 1963, plaintiff, who is not a member of the Retail Liquor Clerks' Union No. 1640, commenced this action in the Superior Court for Thurston County against the personnel board to enjoin it from proceeding with the hearing scheduled for May 28, 1963, and to obtain a judgment declaring Article 20 of the Merit System Rules unconstitutional and void. At or about the time plaintiff commenced his action, the petitioning union requested a postponement of the scheduled hearing before the personnel board. A temporary restraining order was then issued by the superior court, and no hearing for the purpose of determining a bargaining unit has been held.

---

[1]The text of Article 20, § 2, of the Merit System Rules, reads:

"Determination, alteration, modification or combination of an appropriate bargaining unit shall be made by the Personnel Board, upon request from the appointing authority, the employee organization, or upon the Board's own motion, after twenty (20) days notice has been given to the appointing authority, the petitioning employee organization and the representatives of other affected employees.

"In determining a bargaining unit, the Board shall consider the following factors:

"A. Duties, skills and working conditions of the employees;

"B. History of collective bargaining by the employees and their representatives;

"C. Extent of Union organization among the employees;

"D. Desire of the employees."

Motions to dismiss plaintiff's complaint, upon the grounds of lack of a justiciable issue, were made on behalf of the personnel board, at appropriate stages of the proceedings, and denied by the superior court. At the conclusion of the hearing on the merits, the superior court entered an injunction permanently enjoining the personnel board from entertaining the petition for determination of a bargaining unit for the liquor board employees. This was predicated upon the trial court's conclusion that the personnel board had no jurisdiction over employees of the liquor board.

Initially, it must be observed that the superior court entered the injunction upon an erroneous premise. The rationale of the trial judge's conclusion that the personnel board did not have jurisdiction over employees of the liquor board is revealed by the following excerpt from his oral decision:

> Now, the statute creating the Liquor Control Board is RCW 43.66 and following; and the particular section that I call your attention to is RCW 43.66.030 and that reads as follows: "The Board may employ such employees as in its judgment are required from time to time, at such rates of salaries or wages as are fixed by the regulations; and any employee may be dismissed or removed by the Board at its pleasure."

■ RCW 43.66.030, as quoted and relied upon by the trial judge, was amended by the state civil service law, adopted by the people in 1960 as Initiative 207, § 30 (Laws of 1961, ch. 1, § 30, codified as RCW 66.08.016). As amended, the pertinent statute now reads:

> The Board may employ such employees as in its judgment are required from time to time.

Initiative 207, § 4(2) (Laws of 1961, ch. 1, § 4(2), codified as RCW 41.06.040(2)) extended its application to

> Each agency, and each employee and position therein, not expressly excluded or exempted under the provisions of section 7 of this act.

Section 7 of the Initiative (Laws of 1961, ch. 1, § 7, as amended by Laws of 1961, ch. 179, § 1, codified as RCW 41.06.070) does not exclude or exempt liquor board employ-

ees from the civil service law. The purpose, therefore, of amending RCW 43.66.030 was to render it consistent with the state civil service law and to extend the coverage of that law to employees of the liquor board.

Because the trial judge proceeded from a faulty premise, he did not reach the issue which plaintiff sought to have determined—the validity of Article 20 of the Merit System Rules. On appeal, plaintiff renews his arguments upon this issue, whereas the counsel for the personnel board again urges that the complaint be dismissed for lack of a justiciable controversy.

This case was consolidated on the appeal with *Donaldson v. State Personnel Bd.*, 64 Wn.2d 368, 391 P.2d 970 (1964). That case likewise involved a challenge to the validity of Article 20 of the Merit System Rules, but had been dismissed by the superior court for lack of a justiciable controversy. In affirming the dismissal, we stated at 369:

> Plaintiff has failed to establish facts sufficient to support a conclusion that any right or privilege of his has been interfered with or impaired, or is immediately threatened to be interfered with or impaired as required by RCW 34.04.070. The touchstone of justiciability is injury to a legally protected right.

A careful perusal of the pleadings and the statement of facts in the instant case force us to the same conclusion as that reached in the *Donaldson* case.

The sole distinction between this case and the *Donaldson* case is the pendency of a request before the personnel board for determination of an appropriate *bargaining unit* for retail liquor store clerks. Plaintiff has cited no authority, and we have found none, which holds that determination of a *bargaining unit* among public employees is, per se, unconstitutional or violative of the merit system as created by Initiative 207 (Laws of 1961, ch. 1, codified as RCW 41.06). Neither has plaintiff furnished sufficient substantive facts upon which to base a conclusion that (a) plaintiff, as a liquor store manager, would be included within the constituency of any prospective bargaining unit of re-

tail liquor store clerks or other liquor board employees,[2] (b) any particular employee organization would be elected by the employees of the prospective bargaining unit and/or be certified by the personnel board as an exclusive bargaining agent for the employees of such bargaining unit, or (c) any prospective negotiations or agreements, which might be undertaken by any bargaining agent or be approved by plaintiff's employer, would contravene pertinent statutes, the constitution, or plaintiff's rights under the merit system.

In the latter vein (subdivision (c)), it is appropriate to point out that we have long and consistently indulged the presumption that public officers will properly and legally perform their duties until the contrary is shown. *Cawsey v. Brickey*, 82 Wash. 653, 144 Pac. 938 (1914); *Smith v. Hollenbeck*, 48 Wn.2d 461, 294 P.2d 921 (1956). We should not, therefore, undertake to forecast that state officials will permit and enter into negotiations and agreements which will contravene legislative prerogatives, the civil service law, budget exigencies, or public employment concepts. To do this simply amounts to piling one adverse assumption upon another.

Thus, at this point, we are left to speculate and theorize as to what right or privilege of plaintiff's, under the constitution or the merit system, has been interfered with or impaired, or is immediately threatened to be inter-

---

[2]Parenthetically, it should be observed that a bargaining unit of employees need not necessarily coincide or equate with a state agency, nor embrace within it every category of employee within a given agency or department. For example: It would seem reasonable to draw a distinction, for bargaining unit purposes, between janitorial and clerical employees, between professional and nonprofessional personnel, or between clerks and supervisors. The complexities inherent in the determination of an appropriate bargaining unit of employees may be gleaned from a reference to the experiences of the National Labor Relations Board which, though not particularly analogous, do illustrate the possible problems. See: Rothenberg, Labor Relations, ch. 7, 475-512; Beal and Wickersham, The Practice of Collective Bargaining 600-22 (rev. ed. 1963); Lien, Labor Law and Relations, ch. 8, 294; Slovenko, Symposium on Labor Relations Law 151-85.

fered with or impaired by the determination of a *bargaining unit.*

This court has, as recently as *Nostrand v. Little*, 58 Wn.2d 111, 361 P.2d 551 (1961), and *Hubbard v. Medical Serv. Corp.*, 59 Wn.2d 449, 367 P.2d 1003 (1962), adverted to the earlier case of *Washington Beauty College, Inc. v. Huse*, 195 Wash. 160, 164, 80 P.2d 403 (1938), wherein we stated the limitations upon declaratory relief as follows:

> It should be remembered that this court is not authorized to render advisory opinions or pronouncements upon abstract or speculative questions under the declaratory judgment act. The action still must be adversary in character between real parties and upon real issues, that is, between a plaintiff and defendant having opposing interests, and the interests must be direct and substantial and involve an actual as distinguished from a possible or potential dispute, to meet the requirements of justiciability.

Furthermore, RCW 34.04.070, the statute under which this action is brought, provides:

> (1) The validity of any rule may be determined upon petition for a declaratory judgment thereon addressed to the superior court of Thurston county, when it appears that the rule, or its threatened application, interferes with or impairs or immediately threatens to interfere with or impair, the legal rights or privileges of the petitioner. The agency shall be made a party to the proceeding. The declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question.
>
> (2) In a proceeding under subsection (1) of this section the court shall declare the rule invalid only if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rule-making procedures.

Applying, then, these precedental and statutory guidelines to the limited circumstances before us, we are unable to perceive the present existence of an actual, as distinguished from a possible or potential, dispute, or the threat of an immediate impairment or interference with the legal rights or privileges of plaintiff. Neither can we say that

determination of a bargaining unit ipso facto violates any constitutional provisions.

The outstanding injunction is accordingly dissolved and plaintiff's action dismissed.

ROSELLINI, C. J., FINLEY, HUNTER, and HALE, JJ., concur.

DONWORTH, J. (dissenting)—The majority hold that this case presents no justiciable controversy, and, therefore, we cannot reach the merits.

I disagree with this disposition because I am of the opinion that the issues raised by the complaint regarding the validity of Article 20, a multiple section rule promulgated by the State Personnel Board, are all legal issues, and that the enforcement of the rule is imminent. The question of the validity of Article 20 is of great public importance, affecting as it does the rights of several thousand civil service employees of the state and the operation of many departments of state government.

This case was originally consolidated on appeal with *Donaldson v. State Personnel Bd.,* 64 Wn.2d 368, 391 P.2d 970 (1964). That case was filed by an employee of the State Auditor's Office for the purpose of testing the validity of this same Article 20, and was dismissed by the trial court for lack of a justiciable controversy. That ruling was affirmed on appeal. Appellant argues that the *Rosso* case (which is now before us) should also have been dismissed by the trial court on the same ground.

Were it not for the majority opinion, I would not have thought it difficult to recognize the significance of the difference between the *Donaldson* case, *supra,* and the *Rosso* case. Apparently, the majority does not see the significance of the difference, hence, I feel compelled to explain. In the *Donaldson* case, *supra,* no steps had been taken by the personnel board (or anyone else) to apply Article 20 to the State Auditor's Office. On the facts appearing in the *Donaldson* case, there was no reason to believe that, as a practical matter, Article 20 would or could be applied to that office.

On the other hand, in the *Rosso* case, now before this court, the State Personnel Board has started to take action under Article 20, and would have continued but for the issuance of a restraining order. The testimony at the trial indicated that the reason for the union's request for the postponement of the hearing before the board was made because of the institution of this action by respondent. As I read the trial record, the full implementation of Article 20 with regard to the liquor control board appears imminent. If this difference had not been apparent, this court presumably would have dismissed the *Rosso* case at the same time that we affirmed the dismissal of the *Donaldson* case in May, 1964.

It is clear to me that the trial court's denial of the motion to dismiss the present case for lack of a justiciable controversy was correct. In my opinion, there is in this record a sufficient threat of official action under Article 20 to warrant respondent's challenging its validity in a declaratory judgment action. No completed official action is necessary. See *Peterson v. Hagan,* 56 Wn.2d 48, 351 P.2d 127 (1960); *Huntamer v. Coe,* 40 Wn.2d 767, 246 P.2d 489 (1952); *Berndson v. Graystone Materials Co.,* 34 Wn.2d 530, 209 P.2d 326 (1949).

Appellant State Personnel Board argues that, in the determination of an appropriate bargaining unit pursuant to Article 20, § 2, there is nothing contrary to the state constitution, the State Civil Service Law (Initiative 207, now codified as RCW 41.06.010 *et seq.*) or the rights of respondent Rosso under these laws.

If the threat were limited to proceedings under § 2 of Article 20, I might well agree. However, I think that a realistic appraisal of the provisions of Article 20 shows that this function by the State Personnel Board in the determination of the bargaining unit is simply the first of four steps. The second step is the certification of an exclusive bargaining agent by the Director of Personnel, after an election conducted by the Director of Personnel under Article 20, § 3. The third step is collective bargaining provided for in Article 20, § 3, C, on the subjects prescribed and per-

mitted under Article 20, § 5. The fourth step is the making of the collective bargaining agreement consistent with Article 20, § 5.

The State Personnel Board has purported to authorize all of these things under the authority delegated to it by the State Civil Service Law. The only logical or practical purpose of the board's threatened function (the determination of a bargaining unit as provided for in Article 20, § 2) is to facilitate the implementation of the above-mentioned steps pursuant to the rules which the board has promulgated.

In *Peterson v. Hagan, supra* at 65, this court said:

The attorney general argues that, as far as Laws of 1959, chapter 294, § 5, p. 1418, is concerned, any challenge to its constitutionality is presently premature because the director has not yet made any orders. This does not avail because the constitutionality of a statute must be determined by what can be done under it rather than by what has been done. The constitution guards against the chances of infringement.

. . . . .

Moreover, § 5 is void on its face so that the least exercise of the power which the legislature attempted to delegate would be void. *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560; *State ex rel. Trenholm v. Yelle,* 174 Wash. 547, 25 P. (2d) 569; *State ex rel. Govan v. Clausen,* 108 Wash. 133, 183 Pac. 115.

I do not believe the fact that the present case concerns the validity of an administrative rule, whereas *Peterson v. Hagan, supra,* concerned a statute, is a significant difference. The basic underlying proposition is the same. If the complaint of respondent is that the administrative rule is void on its face, then the merits of the issue can be reached *without* considering the actions of the administrator pursuant to the rule, because the actions of the administrator or anyone else under the rule are immaterial to the issue to be decided. That rule was established by *Peterson v. Hagan, supra.*

Applying this analysis to the facts before this court, it is the court's responsibility to determine whether the rules

promulgated in Article 20 exceed the authority given to the personnel board under RCW 41.06.150, and to decide whether they are contrary to the general purpose of the people in enacting RCW 41.06.010, *et seq.* It is its further responsibility to determine whether the rules promulgated under RCW 41.06.150, in so far as they are consistent with RCW 41.06.010, *et seq.*, are unconstitutional in the respects claimed by respondent.

The majority opinion does not answer the above discussion. Instead, it appears to base its ruling on the fact that the creation of a bargaining unit, as an isolated action, has not been shown to harm respondent. The establishment of a bargaining unit is useless and a waste of time for both the union involved and the personnel board, except in so far as it provides for the subsequent steps in the implementation of Article 20, including § 5. To consider the present administrative action as unrelated to the implementation of § 5 of Article 20 is to ignore the obvious.

Nevertheless, the majority opinion states:

Neither has plaintiff furnished sufficient substantive facts upon which to base a conclusion that (a) plaintiff, as a liquor store manager, would be included within the constituency of any prospective bargaining unit of retail liquor store clerks or other liquor board employees, (b) any particular employee organization would be elected by the employees of the prospective bargaining unit and/or be certified by the personnel board as an exclusive bargaining agent for the employees of such bargaining unit, or (c) any prospective negotiations or agreements, which might be undertaken by any bargaining agent or be approved by plaintiff's employer, would contravene pertinent statutes, the constitution, or plaintiff's rights under the merit system. (Footnote omitted.)

Point (a) is raised by the majority of its own motion for the first time on appeal. As the majority itself concedes, this is a fact question. It is a well established rule (which this court has adopted) that we will not consider fact questions raised for the first time on appeal, even if raised by appellant; but, apparently, rather than pass on the merits of

the controversy, the majority prefers to create a factual issue on its own motion.

Unfortunately, the majority's statement of point (a) is incorrect, because it is not supported by the record. In Rosso's own undisputed, sworn testimony, he stated that:

(1) He is presently a member of the Washington Employees' Association.

(2) He formerly was a member of the Retail Liquor Clerks' Union, which organization, prior to the institution of this case, represented another store manager in an attempt to obtain for the other store manager the position held by respondent Rosso.

(3) He felt that he *needed* representation by an employee organization when dealing with his employer.

These statements should be considered in the light of Article 20, § 2, which reads, in part:

In determining a bargaining unit, the Board shall consider the following factors:
A. Duties, skills and working conditions of the employees;
B. History of collective bargaining by the employees and their representatives;
C. Extent of Union organization among the employees;
D. Desire of the employees.

According to Rosso's undisputed testimony, factors B, C, and D are clearly present. There also was testimony concerning Rosso's duties as a liquor store manager which indicates that he has no responsibility at the policy-making level, but rather that his duties are limited to carrying out the rules prescribed by the liquor board concerning the details of the operation of one particular store. In view of the past history indicated by the testimony, there is no reason to believe that Rosso would be excluded from the bargaining unit; indeed, the history indicates that he will be in the bargaining unit.

The error of the majority is twofold. First, it ignores the probability that Rosso will be in the bargaining unit, when the trial record shows that Rosso introduced ample evidence

to show that he would probably be in the bargaining unit. Second (and what is more important), the majority states that Rosso has not "furnished *any* facts" (italics mine) upon which to base such a conclusion. This statement is not supported by the record.

Returning to the portion of the majority opinion quoted above, points (b) and (c) are equally erroneous, although for a different reason. The reason is that these facts are irrelevant to the issues in the case, in view of *Peterson v. Hagan,* 56 Wn.2d 48, 351 P.2d 127. They presuppose a failure to implement § 5 of Article 20 at some point.

Specifically, respondent Rosso's complaint alleged that:

(1) Article 20 exceeded the authority given to the State Personnel Board by Initiative 207 (Laws of 1961, ch. 1, partially codified as RCW 41.06.010, *et seq.*).

(2) Article 20 was contrary to the purpose of Initiative 207, which initiative was intended by the voters of the state to give the state civil service employees the protection of scientific employment practices and management, based on objective studies, and decisions made by the personnel board.

(3) Article 20 was contrary to basic constitutional governmental responsibility, in that it permitted an unconstitutional delegation of power and authority to unions and department heads to make binding contracts on the subject of wages, hours, and working conditions, when the government officials must be free to exercise their discretion in these areas for the public good.

In connection with each of these three issues, respondent stated that he was a member of the state civil service (a civil service employee), and that the effect of the promulgation of Article 20 was to place him in a collective bargaining system created by the personnel board instead of a scientifically managed merit system administered by the personnel board, which merit system was established by Initiative 207. Respondent stated that he anticipated having to pay union dues to organizations to which he did not belong or wish to belong because such things were allowed under § 5 of Article 20. He asserted that he had a statutory

right as a state civil service employee to have the State Personnel Board determine his wages, hours, and working conditions based on objective studies made each year, as required by Initiative 207, instead of by collective bargaining, which latter approach was provided for under § 5 of Article 20. He argued, in effect, that the civil service system was intended not only to protect him from the insecurity resulting from a political patronage system, but also from the dominance of the civil service system by any pressure groups, including union power, which he has good reason to fear, in view of the attempt of the Retail Liquor Clerks' Union to have him replaced by one of their own members.

Since the majority does not wish to discuss the merits of the controversy, I shall forego quotation of either the civil service statute, Initiative 207, or Article 20, § 5. To quote them, in my opinion, constitutes a discussion of the merits because the differences in the statute and the rule are apparent even upon an initial reading of them. Since the majority chooses not to consider the merits at this time, I deem it unnecessary for me to discuss them.

The majority states, in its summary of its position, that:

Thus, *we are left to speculate and theorize as to what right or privilege of plaintiff's,* under the constitution or the merit system, has been interfered with or impaired, or is immediately threatened to be interfered with or impaired by the determination of a bargaining unit. (Italics mine.)

I assume that the majority does not mean to distinguish between the requirements of RCW 34.04.070 as distinguished from RCW 7.24.010, *et seq.,* in the determination of whether a judicial controversy exists which is ripe for decision in a declaratory judgment action. The majority has failed to state otherwise, and I think that there is no basis for any distinction in this case.

Instead, it appears to me that the majority makes its point clearly when it refuses to "speculate" or "theorize" as to how respondent Rosso would be harmed. My disagreement is that the issues raised by respondent are not speculative or theoretical if Article 20, § 5, is implemented. The issues

are precise and factually sustained by the record. Apparently, the majority believes that Article 20, § 5, will not become the guideline for agreements thereunder, and perhaps that no agreements will be made at all. It has stated as its only reason for this that we should presume

> that public officers will properly and legally perform their duties until the contrary is shown. [Citations omitted.] We should not, therefore, undertake to forecast that state officials will permit and enter into negotiations and agreements which will contravene legislative prerogatives, the civil service law, budget exigencies, or public employment concepts. To do this simply amounts to piling one adverse assumption upon another.

The only "assumptions" the majority would have to make to address itself to the issues in this case is that Article 20, § 5, will be implemented as written. If these assumptions are "adverse," the public officials (appellants) should be told what assumptions are adverse and when and why they are so. In the absence of an adjudication by this court, these public officials have no way of knowing how this court views Article 20, § 5. That is why this case was brought in the first place. The "presumption" that the public officials properly perform their duties until the contrary is shown means nothing when the issue is "What is the law?" In fact, to indulge the presumption in this case frustrates the whole purpose of the declaratory judgment statutes.

The majority wants to postpone the decision of the important question of law presented by this record until an overt act has occurred. It seems to me that the only thing speculative or theoretical about the effect of § 5 of Article 20 is that it has not yet been enforced because the parties involved are awaiting a decision of this court in this declaratory proceeding. I believe that a void administrative rule is like a void statute, and that we should answer the question presented by this record, to wit—is § 5 void or not void? In *Peterson v. Hagan,* 56 Wn.2d 48, 351 P.2d 127 at 66, we said:

> Furthermore, this action was brought under the declaratory judgment act (Laws of 1935, chapter 113; RCW 7.24) which should be liberally construed. Under it courts

have entertained actions to test the constitutionality of a statute before it became effective. In *Berndson v. Graystone Materials Co.*, 34 Wn. (2d) 530, 209 P. (2d) 326, the court quoted with approval from Anderson, Declaratory Judgments (1st ed.), 192, § 68, as follows:

" 'However, it is settled beyond peradventure of a doubt, notwithstanding some decisions apparently to the contrary, that a declaratory judgment action will lie to determine the validity of rights under a statute, even though no steps have been taken to enforce it, or that the effective date of the statute, when it would be subject to enforcement, has not arrived.' "

The court continued:

"The author cites, as authority for the above statement, and we think rightly, this court's opinion in *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A.L.R. 1345. See, also, *Pierce v. Society of Sisters,* 268 U. S. 510, 69 L. Ed. 1070, 45 S. Ct. 571, 39 A.L.R. 468, and *State ex rel. Yakima Amusement Co. v. Yakima County,* 192 Wash. 179, 183, 185, 73 P. (2d) 759." (Footnote omitted.)

As I read the record, this case presents a justiciable controversy which is ripe for decision. Therefore, in my opinion, the court has a *duty* to reach the merits now. The declaratory judgment statutes were specifically designed to provide a forum for litigants whose controversy is real and not fanciful, although the parties have not yet committed an overt act based upon a rule or statute which is of debatable validity. See *Ayers v. Tacoma,* 6 Wn.2d 545, 108 P.2d 348 (1940).

For the reasons stated above, I am convinced that we have here a justiciable controversy involving a question of extreme public importance which requires an immediate decision. I would render a decision on the merits today rather than, as will inevitably happen, next year or later.

OTT, J., concurs with DONWORTH, J.

HILL, J. (dissenting)—I concur in the conclusion of Judge Donworth's dissent that we have a justiciable controversy before us which should be decided on the merits.

WEAVER, J., concurs with HILL, J.